IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORGE HUGHES,** | : | CIVIL NO. 1:06-CV-01304 |
| **Plaintiff** | : | (Judge Rambo) |
| v. | : | |
| **K. F. HOGSTEN,** *et al.*, | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

Before the court is a motion to dismiss the *Bivens*[1]-styled second amended complaint (Doc. 44) of Plaintiff Jorge Hughes ("Hughes"), or, in the alternative, for summary judgment, filed on behalf of several prison officials[2] from the Federal Correctional Institution at Allenwood in White Deer, Pennsylvania ("FCI-Allenwood") (collectively, "Defendants"). Hughes contends that Defendants failed to provide adequate medical care for his various medical conditions. For the reasons set forth below, the motion for summary judgment will be granted.

---

[1] *Bivens v. Six Unknown Named Agent of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

[2] Named as defendants are Karen Hogsten, Warden; Ronald Laino, Health Services Administrator ("HSA"); Michaeleen Powanda, Physician's Assistant ("PA"); Robert Manenkoff, former PA; and Calvin Vermeire, former Medical Officer.

I.      **Background**

Hughes was incarcerated at FCI-Allenwood from May 3, 2005, to January 8, 2007. While there, Hughes complained of several medical conditions, including back and neck pain, a hernia, and a cyst on his right kidney.[3] The record indicates the following with respect to his medical conditions and associated treatment.[4]

On May 3, 2005, during his intake screening conducted by FCI-Allenwood's medical staff, Hughes complained of chronic pain in his testicles. (Doc. 61-2 at 29.) The following day medical staff evaluated and treated Hughes for blood in his feces, difficulties swallowing, pain in his testicles, cervical pain, and pain during urination due to a possible cyst in his kidney. (*Id.* at 31-32.) Laboratory tests were ordered. (*Id.*)

On May 9, 2005, an x-ray of Hughes' abdomen was taken for the potential presence a polycystic kidney, but returned with an impression of a normal abdomen.

---

[3] In his original complaint, Hughes stated his medical conditions as back pain, a hernia, a cyst on his testicle, and liver and kidney problems. (Doc. 1.) However, the instant complaint does not include a condition relating to a cyst on his testicle; rather, he claims to have a cyst on his right kidney. (Doc. 44.)

[4] In response to the instant motion for summary judgment, Hughes has not filed a counter statement of material facts. In opposing a motion for summary judgment, Middle District Local Rule 56.1 provides, in relevant part, that "all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Thus, because Hughes has not filed a counter statement of material facts regarding Defendants' motion for summary judgment, all of the facts contained in their statement of material facts are deemed admitted.

(*Id*. at 34.)  Further, on May 17, 2005, x-rays of Hughes' cervical and lumbar spine were taken, revealing muscle spasms and mild degenerative changes, respectively. (*Id*. at 36.)

On May 23, 2005, Defendant Powanda evaluated Hughes for left testicular pain which had been occurring for six months.  (*Id*. at 38.)  Defendant Powanda's notes indicate that labwork and x-rays had been ordered previously and he was waiting for the results.  (*Id*.)  On June 20, 2005, Defendant Powanda evaluated Hughes again for testicular pain and diarrhea.  (*Id*. at 39-40.)  He diagnosed inflammation of the testicle and ordered an ultrasound.  (*Id*.)  A scrotal ultrasound was taken on July 11, 2005, revealing no testicular lesions, but indicated a small cyst above the left epididymis. (*Id*. at 42.)

Defendant Powanda saw Hughes again on July 7, 2005, for chest pain radiating along the left side of his body.  (*Id*. at 40.)  He diagnosed Hughes with inflammation of the chest muscle wall, prescribed Tylenol or Ibuprofen, and instructed Hughes to apply warm compresses to the affected area.  (*Id*. at 41.)  Hughes was evaluated for chest pain again on July 21, 2005, by Defendant Manenkoff, who diagnosed Hughes with inflammation of the chest muscle wall and instructed him to follow his previous treatment plan.  (*Id*. at 41.)  In his notes, Defendant Manenkoff indicated that Hughes had not yet purchased or taken Ibuprofen.  (*Id*.)

Hughes was seen again by medical staff for chest pain on July 27, 2005. (*Id*. at 43.) Staff noted that Hughes stated that Tylenol was not easing the pain, but he had not yet tried warm compresses. (*Id*.) Hughes was also continuing to lift weights and exercise, which was causing more pain. (*Id*.) He was advised to stop lifting weights and doing push-ups, and to continue the prescribed treatment plan of Tylenol or Ibuprofen and warm compresses. (*Id*.)

Defendant Powanda evaluated Hughes on August 15, 2005 for complaints of abdominal pain radiating down his left testicle and left leg. (*Id*. at 43-44.) He reviewed previous labwork and tests, and completed a consultation for a CT scan. (*Id*. at 44.) The CT scan of the abdomen and pelvis took place on September 23, 2005. (Doc. 61-3 at 1.) The CT scan revealed an abnormal liver possibly due to patchy fatty infiltration, and bilateral benign-appearing renal cysts. (*Id*.) The report also suggested correlation with an MRI and liver function test. (*Id*.)

On October 6, 2005, FCC-Allenwood's Clinical Director J. Brady[5] evaluated Hughes for neck and left leg pain. (Doc. 61-2 at 46.) Dr. Brady also completed a consultation for an ultrasound of Hughes' liver. (Doc. 61-3 at 2.) An abdominal ultrasound was completed on October 17, 2005, revealing fatty infiltration of the

---

[5] Dr. Brady is not a named defendant in this action.

liver, as well as a lesion in the left kidney which would need to be further evaluated with either a CT scan or an MRI.  (*Id*. at 4.)

On October 19, 2005, Defendant Manenkoff evaluated Hughes for pain and yellow discharge in his right ear.  (*Id*. at 5.)  Defendant Manenkoff diagnosed Hughes with swimmer's ear and prescribed antibiotic ear drops.  (*Id*.)

Hughes was a no-show for a requested sick call appointment on November 18, 2005.  (*Id*.)  On November 28, 2005, Defendant Powanda evaluated Hughes for abdominal pain and referred him to a doctor.  (*Id*. at 6.)  Doctor Brady evaluated Hughes on December 1, 2005, for left neck pain, left leg pain, and abdominal pain radiating to the testicles.  (*Id*. at 6-7.)  On December 29, 2005, Doctor Brady conducted a follow-up appointment with Hughes for pain management.  (*Id*. at 7-8.)

On January 12, 2006, Defendant Powanda evaluated Hughes for left groin pain radiating to his back.  (*Id*. at 9, 11.)  He also completed a consultation for a colonoscopy.  (*Id*.)  Thereafter, on March 23, 2006, Hughes was seen by a general surgeon for an internal consultation.  (*Id*. at 10.)  The surgeon recommended a colonoscopy followed by a hernia repair.  (*Id*.)

On April 3, 2006, a paramedic evaluated Hughes for abdominal pain and a left-sided headache radiating down to his left trapezoid which had occurred while Hughes was exercising on a stair-climber.  (*Id*. at 13.)  Further, on April 14, 2006, Hughes

was seen by Defendant Powanda for the left-sided headache radiating down his left side.  (*Id*. at 15.)  Defendant Powanda ordered an x-ray of Hughes' sinuses.  (*Id*.)  However, on April 28, 2006, Hughes informed Defendant Powanda that he felt better and did not need to be seen for the sinus problem.  (*Id*. at 15.)

On June 5, 2006, Hughes was seen by Defendant Powanda for abdominal pain.  (*Id*. at 16.)  Defendant Powanda noted the tenderness in the abdomen, and indicated that the colonoscopy had been scheduled.  (*Id*.)  Hughes had the colonoscopy on June 14, 2006.  (*Id*. at 19.)  As a result, his diagnosis included a distal sigmoid colon polyp, a hyperplastic polyp, a transverse colon polyp, and a tubular adenoma.  (*Id*. at 22.)  A general surgeon conducted a follow-up appointment on July 27, 2006, and recommended hernia repair.  (*Id*. at 19.)

On September 22, 2006, Hughes had surgery to repair his hernia.  (*Id*. at 27-30.)  Following the surgery he returned to the clinic on September 23, 25, and 28, 2006, for wound checks.  (*Id*. at 31.)

On September 28, 2006, Hughes was seen by Defendant Powanda for back pain.  (*Id*. at 31-32.)  Defendant Powanda prescribed warm compresses and Ibuprofen.  (*Id*. at 32.)

Hughes filed the instant action on July 3, 2006.  (Doc. 1.)  In the original complaint, Hughes asserted claims of inadequate medical care for back pain, a hernia,

a cyst on his testicle, and liver and kidney problems.  Named as the sole defendant was Karen Hogsten, FCI-Allenwood's warden.

On December 29, 2006, Defendant Hogsten filed a motion to dismiss, or, in the alternative, for summary judgment.  (Doc. 19.)  Hughes objected to the motion to dismiss, (*see* Doc. 25), but also filed motions for leave to amend the original complaint, (Docs. 24 & 29).  By order dated May 8, 2007, the court dismissed as moot Defendant Hogsten's motion to dismiss, granted Hughes' motion for leave to file an amended complaint, and directed Hughes to file the amended complaint.  (Doc. 33.)  Specifically, Hughes was directed to comply with Federal Rule of Civil Procedure 8 in drafting his amended complaint.  (*See id.*)

On June 5, 2007, Hughes filed an amended complaint.  (Doc. 35.)  In his amended complaint, Hughes again named Defendant Hogsten, and added four additional defendants.  However, the amended complaint failed to comply with the court's directives set out in its May 8, 2007 order.  As a result, the court granted Hughes the opportunity to file a second amended complaint in compliance with the court's directives.  (*See* Doc. 37.)  However, Hughes failed to file an amended complaint within the time period prescribed by the court.  Consequently, by order dated July 23, 2007, the court proceeded on the original complaint by vacating its

May 8, 2007 order dismissing as moot Defendant Hogsten's motion to dismiss and reinstating that motion to dismiss the original complaint. (Doc. 40.)

On the same day the court issued that order, Hughes filed a motion for leave to file a second amended complaint, (*see* Doc. 41), which the court construed as a motion for an extension of time in which to file a second amended complaint, (*see* Doc. 43.) The court granted the motion, (*see id.*), and Hughes filed his second amended complaint on August 8, 2007, (Doc. 44). In that complaint, Hughes makes allegations under the Eight Amendment that Defendants were deliberately indifferent to his serious medical needs.[6]

---

[6] Hughes' second amended complaint contains allegations of negligence on the part of the individual defendants. It is well-established that the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, provides a remedy in damages for the simple negligence of employees of the United States with regard to their protection of federal inmates. *United States v. Muniz*, 374 U.S. 150, 150 (1963). The FTCA was designed to protect government employees, acting in their official capacity and within the scope of their employment, from negligence-based lawsuits. In presenting an FTCA claim, a plaintiff must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss. *Mahler v. United States*, 196 F. Supp. 362, 364 (W.D. Pa. 1961). Moreover, an action filed in federal court pursuant to the FTCA must first be submitted in writing to the appropriate federal agency as an administrative tort claim. 28 U.S.C. § 2675. The statute of limitations for submitting an administrative tort claim to the agency is two years. *Id*. at § 2401(b). The deadline for seeking judicial review of the agency's denial of the administrative tort claim is six months. *Id*. Further, it is well-established that a complaint filed pursuant to the FTCA must be brought against the United States. *Id*. at § 2679(b); *Sprecher v. Graber*, 716 F.2d 968, 973 (2d Cir. 1983); *Scheimer v. Nat'l Capital Region, Nat'l Park Service*, 737 F. Supp. 3, 4 (D.D.C. 1990).

In the instant action, despite his allegations of negligence, Hughes has not filed an administrative tort claim with the Bureau of Prisons' ("BOP") Northeast Regional Office. (*See* Doc. 61-2 at 4.) On February 6, 2007, Hughes filed an exhibit which appears to be a completed form for a claim for damage, injury, or death, to be submitted to the Northeast Regional Office. (*See* Doc. 26.) However, this form does not appear to have been sent to the Regional Office, nor does the BOP have any record of having received such a form from Hughes (*see* Doc. 61-2 at 4). Further, Hughes has

The court directed service of the second amended complaint upon the newly named defendants on August 17, 2007. (Doc. 47.) On that same date, the court directed Defendant Hogsten to answer or otherwise respond to the second amended complaint within sixty (60) days of service upon the newly named defendants. (Doc. 46.)

After the court granted Defendants an extension of time in which to respond to the second amended complaint, (*see* Doc. 57), all Defendants filed a motion to dismiss the second amended complaint, or, in the alternative, for summary judgment, on April 22, 2008. (Doc. 59.) Their brief in support of the motion followed on May 6, 2008. (Doc. 60.) Hughes did not file a brief in opposition. By order dated June 9, 2008, the court directed Hughes to file a brief in opposition within fifteen (15) days of the date of the order. (Doc. 62.) In addition, the court notified Hughes that failure to comply with the order would result in the motion to dismiss being deemed unopposed and this action would be dismissed without a merits analysis. (*Id*.)

Hughes filed his brief in opposition to the motion to dismiss, or, in the alternative, for summary judgment, on July 11, 2008. (Doc. 64.) Defendants replied

---

not named the United States in his second amended complaint. (*See* Doc. 44.) Thus, the court is not inclined to convert this action to an action under the FTCA.

to the brief in opposition on July 18, 2008. (Doc. 65.) As a result, the motion to dismiss, or, in the alternative, for summary judgment, is ripe for disposition.

## II. Standards of Review

### A. Motion to Dismiss

Defendants have filed a motion which, in part, seeks dismissal of the complaint on the grounds that Hughes' complaint fails to state a claim upon which relief can be granted, as provided by Rule 12(b) of the Federal Rules of Civil Procedure. The motion, however, goes beyond a simple motion to dismiss under Rule 12(b) because it is accompanied by evidentiary documents outside the pleadings contravening Hughes' claims. Rule 12 provides, in pertinent part, as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The court will not exclude the evidentiary materials accompanying Defendants' motion to dismiss because Hughes also has been given a reasonable opportunity to present material relevant to the motion. Thus, Defendants' motion to dismiss, or, in the alternative, for summary judgment, will be treated solely as seeking summary judgment.

### B.     Motion for Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id*. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary

11

judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### III.  Discussion

In their brief in support of the motion for summary judgment, Defendants raise the issue of qualified immunity.[7]  The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  This doctrine provides not only a defense to liability, but "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

---

[7] Defendants concede that Hughes has exhausted the administrative remedy procedure with respect to the *Bivens* claims raised in his second amended complaint. (*See* Doc. 60 at 3). Thus, the court need not address the threshold issue of exhaustion of administrative remedies with respect to any of Hughes' claims.

To determine whether government officials have lost their immunity, the court must first decide if the plaintiff has demonstrated "a deprivation of an actual constitutional right." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *see also Saucier*, 533 U.S. at 201 ("A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"); *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004); *accord Wright v. City of Philadelphia*, 409 F.3d 595, 600-01 (3d Cir. 2005) (noting that six Courts of Appeals have ruled that first step in a qualified immunity analysis is whether a constitutional violation has occurred). Second, if the court believes a constitutional violation has occurred, it must consider whether the right was "clearly established." *Saucier*, 533 U.S. at 201.

When immunity is raised at the summary judgment stage, the court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity. *See Gruenke v. Seip*, 225 F.3d 290, 299-300 (3d Cir. 2000); *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 839-42 (E.D. Pa. 2000); *see also Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish

. . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").

Proceeding under the above framework, the court will examine Hughes' Eighth Amendment claim to determine whether Defendants are entitled to qualified immunity, and whether summary judgment is warranted.

To demonstrate a *prima facie* case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendants acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: Initially, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).[8]

---

[8] The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, where the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (quoting *White v. Napolean*, 897 F.2d 103, 109 (3d Cir. 1990); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

This test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White*, 897 F.2d at 108-10.

In the instant case, throughout the relevant time period, Hughes was seen on numerous occasions by outside specialists and various medical personnel at FCI-Allenwood. He was repeatedly evaluated and was prescribed medication to ease his discomfort. Diagnostic tests were ordered, and performed, to facilitate treatment.

15

Surgery was performed. Unfortunately, despite all the medical intervention, Hughes continues to suffer from discomfort. This is clearly a case where Hughes has been given medical attention and is dissatisfied with the results. An inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 235. Courts will not second guess whether a particular course of treatment is adequate or proper. *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997). Moreover, there is nothing in the record demonstrating that any significant delay in conducting Hughes' hernia repair or, for that matter, any other procedure, was deliberate or intentional on the part of any defendant. Under these circumstances and based upon the well-documented course of treatment set forth in the record, the court finds that Defendants were not deliberately indifferent to Hughes' serious medical needs. Thus, Hughes fails to establish a constitutional violation and qualified immunity shields Defendants from suit. Defendants' motion for summary judgment on this issue will be granted.[9]

---

[9] Defendants have also raised various independent grounds as to why the instant complaint should be dismissed as to individual defendants. By way of example, Defendants contend that Defendants Hogsten, Laino, and Vermeire should be dismissed based upon the doctrine of sovereign immunity. The doctrine of sovereign immunity precludes a plaintiff from bringing a *Bivens* action against a federal agency, *see FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). Suits brought against federal officials in their official capacities are to be treated as suits against the employing government agency. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (cited with approval in *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1143 n.3 (3d Cir. 1995)). As a result, a *Bivens* suit brought against an individual federal official acting in his official capacity is barred by the doctrine of sovereign immunity, *see Meyer*, 510 U.S. at 484, and the court lacks jurisdiction to hear

An appropriate order follows.

                                                s/Sylvia H. Rambo
                                                SYLVIA H. RAMBO
                                                United States District Judge

Dated: October 9, 2008.

---

the claim, *see Kabakjian v. United States*, 267 F.3d 208, 211 (3d Cir. 2001) (holding that district courts lack jurisdiction to hear claims brought against the United States unless Congress has explicitly waived sovereign immunity).  In the instant case, to the extent that Hughes seeks to impose liability on the above-referenced defendants in their official capacities as employees of the BOP, Hughes' *Bivens* claims against these defendants are barred by the doctrine of sovereign immunity.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORGE HUGHES,** | : | **CIVIL NO. 1:06-CV-01304** |
| **Plaintiff** | : | **(Judge Rambo)** |
| v. | : | |
| **K. F. HOGSTEN,** *et al.*, | : | |
| **Defendants** | : | |

# **O R D E R**

AND NOW, this 9th day of October, 2008, upon consideration of the motion to dismiss, or, in the alternative, for summary judgment (Doc. 59), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. The motion for summary judgment (Doc. 59) is **GRANTED**.

2. The Clerk of Court is directed to **ENTER** judgment in favor of the Defendants and against the Plaintiff.

3. The stay of the court's order dated July 23, 2007 (Doc. 40) is **LIFTED**, and Defendant Hogsten's reinstated motion to dismiss (Doc. 19) is **DISMISSED AS MOOT**.

4. The Clerk of Court is directed to **CLOSE** this case.

                                               s/Sylvia H. Rambo
                                               SYLVIA H. RAMBO
                                               United States District Judge